John J. Edmonds (State Bar No. 274200)
jedmonds@ip-lit.com
**COLLINS EDMONDS**
1851 East First Street, Suite 900
Santa Ana, California 92705
Telephone: (951) 708-1237
Facsimile: (951) 824-7901

Attorney for Plaintiff,
**SYNERON MEDICAL LTD.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNERON MEDICAL LTD., <br><br> Plaintiff, <br><br> v. <br><br> INVASIX, INC. and INMODE MD LTD. D/B/A INMODE MD D/B/A INMODE AESTHETIC SOLUTIONS D/B/A INMODE <br><br> Defendants. | CASE NO. _____ <br><br> **ORIGINAL COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 6,148,232; 6,615,079; 8,496,654; 8,579,896 AND 9,108,036** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Complaint Filed: January 28, 2016 |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff Syneron Medical Ltd. submits this Original Complaint against Defendants Invasix, Inc. and InMode MD, Ltd. d/b/a InMode MD d/b/a InMode Aesthetic Solutions d/b/a InMode as follows:

**THE PARTIES**

1.      Syneron Medical Ltd. ("Syneron" or "Plaintiff") is incorporated in the State of Israel. Its headquarters are located at Industrial Zone, Yokneam Illit, 20692, Israel.

2.      On information and belief, Invasix, Inc. ("Invasix") is a Delaware corporation with its principal place of business at 192 Technology Unit A&B, Irvine, CA 92618.

3.      On information and belief, InMode MD, Ltd. d/b/a InMode MD d/b/a InMode Aesthetic Solutions d/b/a InMode ("InMode") is an Israeli entity with an international headquarters at Tabor House, Industrial Park, Yokneam 20692, POB 44, Israel; and with a North American head office at 192 Technology Unit A&B, Irvine, CA 92618.  InMode and Invasix may be collectively referred to as "Defendants."

**JURISDICTION AND VENUE**

4.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      On information and belief, Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to due process and the California Long Arm Statute, due at least to their continuous and systematic business contacts in California,

including related to operations conducted from their Irvine, California facilities and the infringements alleged herein. Further, on information and belief, Defendants have, within California, engaged in at least the selling of accused products and practicing the accused methods detailed herein. In addition, Defendants induce infringement of the patents-in-suit by sellers and/or infringing users located in California. Further, on information and belief, Defendants regularly conduct and/or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from goods and services provided to persons and/or entities in California.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b). Without limitation, on information and belief, Defendants are subject to this Court's specific and general personal jurisdiction in this district, due at least to their continuous and systematic contacts in this District, including related to operations conducted from their Irvine, California facilities and the infringements alleged herein. Further, on information and belief, Invasix has, within this District, engaged in at least the selling of accused products listed herein. In addition, Invasix induces infringement of the patents-in-suit by sellers and/or infringing users located in this District. Further, on information and belief, Defendants regularly conduct and/or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from goods and services provided to persons and/or entities in this District.

**SYNERON**

7.     Syneron is a leading global aesthetic device company with a comprehensive product portfolio and a global distribution footprint.  Its technology enables physicians to provide advanced solutions for a broad range of medical-aesthetic applications including body contouring,  hair removal, wrinkle reduction, improving the skin's appearance through the treatment of superficial benign vascular and pigmented lesions, and the treatment of acne, leg veins and cellulite.

8.     Syneron's intellectual property comprises the patents-in-suit, which are 6,148,232; 6,615,079; 8,496,654; 8,579,896 and 9,108,036.  This suit is being brought to address Defendants' unlicensed and unauthorized infringement of the patents-in-suit.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,148,232

9.     United States Patent No. 6,148,232 ("the '232 patent"), entitled "Transdermal drug delivery and analyte extraction," issued on November 14, 2000.

10.     Syneron is the present assignee of the entire right, title and interest in and to the '232 patent, including all rights to sue for past and present infringement. Accordingly, Syneron has standing to bring this lawsuit for infringement of the '232 patent.

11.     The various claims of the '232 patent comprise devices for ablating stratum corneum epidermidis of skin on the body of a subject.  Such devices comprise a plurality of electrodes which are adapted to be applied to the skin of the subject at respective points; and a power source which is adapted to apply, between two or more

- 4 -

of the plurality of electrodes, an alternating electric current so as to cause ablation of the stratum corneum.

12. Invasix has been and now is infringing at least claim 29 of the '232 patent by actions comprising making, using, importing, selling and/or offering to sell devices for ablating stratum corneum epidermidis of skin on the body of a subject. Such devices comprise a plurality of electrodes which are adapted to be applied to the skin of the subject at respective points. Such devices further comprise power source which is adapted to apply, between two or more of the electrodes, an alternating electric current so as to cause ablation of the stratum corneum. Such devices are referred to by Invasix as the Fractora. Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

13. InMode has been and now is infringing at least claim 29 of the '232 patent by actions comprising using, importing, selling and/or offering to sell devices for ablating stratum corneum epidermidis of skin on the body of a subject. Such devices comprise a plurality of electrodes which are adapted to be applied to the skin of the subject at respective points. Such devices further comprise power source which is adapted to apply, between two or more of the electrodes, an alternating electric current so as to cause ablation of the stratum corneum. Such devices are referred to by InMode as the Fractora. Such devices may further comprise the Fractora hand piece when used

in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

14.     An exemplary description of Defendants' infringement of exemplary claim 29 of the'232 Patent is set forth below (claim language in italics):

(a)     *A device for ablating stratum corneum epidermidis of skin on the body of a subject, comprising* – The Fractora device is a handheld device that uses fractional RF (radio frequency) energy delivered through removable, disposable pin tips that may be used for ablation of the surface skin on the body of a customer receiving skin rejuvenation treatments. The Fractora handheld device is provided power through connection to the BodyTite device.   For example, The Fractora hand piece uses fractional RF energy delivered through electrode pins that can be used for ablation (black points in Figure 1 below):

The Fractora handpiece technology uses fractional RF energy delivered through pins that may be used for ablation (black), coagulation (white), and sub-necrotic heating (red) at various degrees, as presented in Figure 1. Using lower fluences at each pin, the non-ablative results of fractional infrared lasers or fractional erbium YAG lasers can be simulated. At higher powers, the deep penetration of the energy creates clinical treatment effects of CO2 with the addition of non-ablatative, non-coagulative dermal heating that can be used to better address the clinical issues of wrinkles, laxity, texture and scars, both on the face and on the neck and body skin.



*Figure 1. Fractora Fractional Technology.*

– 6 –

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 5.

(b)     *a plurality of electrodes, which are adapted to be applied to the skin of the subject at respective points* – The Fractora hand piece comprises both a 60 electrode pin tip variant and a 20 electrode pin tip variant; both variants are single use and disposable. Each tip includes a plurality of pins (60 or 20). The 60 pin tip and 20 pin tip electrodes are specifically designed to be applied to a subject's facial skin or smaller areas of isolated skin requiring special treatment, respectively, including, for example, as shown in Fig. 1, above.  The Fractora device further comprises a plurality of ground electrodes which may also be applied to a subject's skin.

(c)     *a power source, which is adapted to apply, between two or more of the plurality of electrodes, an alternating electric current so as to cause ablation of the stratum corneum* – The Fractora handpiece is connected to a power source which applies an alternating electric current between the plurality of electrodes (60 pin tip or 20 pin tip) to cause ablation of the subject's surface skin.  Invasix provides guidelines on the amount of energy to be used depending on how extensive the ablation treatment is required to achieve the desired effect upon the subject's surface skin. The RF energy guidelines provided in Invasix's BodyTite Clinical Manual range from 10-25 mJ per pin for superficial ablation to 40-60 mJ per pin for deep ablation, for example as shown below:

| Desired Treatment Effect | RF Energy [mJ]/pin] | Number sessions | Delay between sessions [Weeks] | Down time days | Clinical Improvement |
|---|---|---|---|---|---|
| Superficial ablation | 10-25 | 3-5 | 3-4 | None | Texture, tone, very fine lines |
| Moderate ablation | 25-40 | 2-3 | 4-5 | 2-3 | Texture, tone, pigments, fine lines |
| Deep ablation | 40-60 | 1-2 | 5-6 | 7-10 | Texture, tone, pigments, fine lines, fine vessels, wrinkles, acne scars |

*Table 1: Typical Treatment Parameters for Various Clinical Effects.*

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 13. Invasix also provides

input and output power ratings on its website:

**Specifications:**

| Frectora Fractional Skin Resurfacing | Operates on the Invasix Platfrom |
|---|---|
| Pin Configuration | Small - 10-2,20 Pins<br>Large - 10-6,60 Pins |
| Input Power | 100-240 VAC, 50-60 Hz, 1.4A |
| Size (h•w•d) | 100cm • 36 cm • 36 cm<br>[39" • 15" • 15"] |
| Weight | 15 kG [33iBS.] |
| Maximum Output Energy | 62 mJ/pin |
| Output Frequency | 1MHz |

*See*, http://www.invasix.com/Fractora_7.   An alternating current may be passed

between the ground electrodes and the pins, for example as shown below:



*See*, Fractora Animation, InvasixAesthetics Youtube Channel; http://www.youtube.com/watch?v=W_7bbibKcno.

15.     Defendants are thus liable for infringement of the '232 patent pursuant to 35 U.S.C. § 271.

As a result of Defendants' infringing conduct relative to the '232 patent, Defendants have damaged Syneron. Defendants are liable to Syneron in an amount that adequately compensates Syneron for their infringement which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 6,615,079

16.     United States Patent No. 6,615,079 ("the '079 patent"), entitled "Transdermal drug delivery and analyte extraction," issued on September 2, 2003.

17.     Syneron is the present assignee of the entire right, title and interest in and to the '079 patent, including all rights to sue for past and present infringement. Accordingly, Syneron has standing to bring this lawsuit for infringement of the '079 patent.

18.     The various claims of the '079 patent have coverage comprising methods for ablating the stratum corneum epidermidis of a subject. Such methods comprise placing a plurality of electrodes against the subject's skin at respective points; and applying electrical energy to the plurality of the electrodes so as to induce an electrical current to flow through the stratum corneum, causing ablation of narrow channels through the stratum corneum at the respective points.

19.     Invasix has been and now is infringing at least claim 10 of the '079 patent by actions comprising practicing methods for ablating the stratum corneum epidermidis of a subject. Such methods comprise placing a plurality of electrodes against the subject's skin at respective points; and applying electrical energy to the plurality of the electrodes so as to induce an electrical current to flow through the stratum corneum, causing ablation of narrow channels through the stratum corneum at the respective points.  The devices that perform such methods are referred to by Invasix as the

Fractora.  Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

20.    InMode has been and now is infringing at least claim 10 of the '079 patent by actions comprising practicing methods for ablating the stratum corneum epidermidis of a subject.  Such methods comprise placing a plurality of electrodes against the subject's skin at respective points; and applying electrical energy to the plurality of the electrodes so as to induce an electrical current to flow through the stratum corneum, causing ablation of narrow channels through the stratum corneum at the respective points.  The devices that perform such methods are referred to by InMode as the Fractora.  Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

21.    An exemplary description of Defendants' infringement of exemplary claim 10 of the '079 Patent is set forth below (claim language in italics):

(a)    *A method for ablating the stratum corneum epidermidis of a subject, comprising* – Fractora is a handheld device that uses fractional RF energy delivered through removable, disposable pin tips that may be used for ablation of the surface skin on the body of a customer receiving skin rejuvenation treatments. The Fractora handheld device is provided power through connection to the BodyTite device. For

example, The Fractora hand piece uses fractional RF energy delivered through electrode pins that can be used for ablation (black points in Figure 1 below):



The Fractora handpiece technology uses fractional RF energy delivered through pins that may be used for ablation (black), coagulation (white), and sub-necrotic heating (red) at various degrees, as presented in Figure 1. Using lower fluences at each pin, the non-ablative results of fractional infrared lasers or fractional erbium YAG lasers can be simulated. At higher powers, the deep penetration of the energy creates clinical treatment effects of $CO_2$ with the addition of non-abltative, non-coagulative dermal heating that can be used to better address the clinical issues of wrinkles, laxity, texture and scars, both on the face and on the neck and body skin.

*Figure 1. Fractora Fractional Technology.*

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 5.

(b)  *placing a plurality of electrodes against the subject's skin at respective points* – use of the Fractora device comprises placing the plurality of electrodes against the subject's skin at respective points, for example as shown and described in Figure 1, above.

(c)  *applying electrical energy to the plurality of the electrodes so as to induce an electrical current to flow through the stratum corneum, causing ablation of narrow channels through the stratum corneum at the respective points* – After placing the Fractora hand piece with the disposable electrode pin tips against the subject's skin, the Fractora hand piece then applies an electrical current to the plurality of electrodes,

which induces an electrical current to flow through the subject's surface skin causing

ablation of the treatment area, for example as described below:

The Fractora handpiece is designed for delivering RF energy to the skin surface in a fractional manner with the energy applied to <10% of the total coverage area. The energy is delivered to the skin through bipolar arrays of pins and results in localized fractional heating and ablation of the skin that is in direct contact with the pins. Ablation of the skin promotes skin resurfacing while untreated skin between the pins promotes faster healing of the tissue. There is also the contribution of non-ablative, non-coagulative dermal matrix heating that occurs in the skin that is not subject to fractional ablation.

The BodyTite device with the Fractora handpiece is enabling RF fractional procedures for ablative and micro-ablative skin resurfacing. This is done by continually monitoring the electrical parameters of the tissue in the treated area, forwarding this data to the computer for analysis. It has audible treatment status control and protection against carbonization.

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 6.

22.    Additionally, or in the alternative, upon information and belief, Defendants have induced infringement of the '079 patent in this judicial district, the State of California and elsewhere in the United States, by actions comprising intentionally inducing the direct infringement of the '079 patent by at least their customers and other end users of the Fractora.  Such direct infringement comprises use of the Fractora by such customers and other end users.  Upon such information and belief, such inducement comprises aiding, abetting, and encouraging the infringing use of the Fractora, including by providing manuals and instructions.

23.    Upon information and belief, Defendants' induced infringement has occurred at least since it has become aware of the '079 patent.  At a minimum, Defendants  became aware of the '079 patent by virtue of this Complaint.

24.    Further, on information and belief, Defendants' inducement of such direct infringement comprises their knowledge that the induced acts constitute direct

infringement of the '079 patent by such customers and end users, and also their specific intent that such customers and end users of the Fractora infringe the '079 patent. Such knowledge and specific intent is evidenced by the fact that infringement of the '079 patent from use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '079 patent and of the details of the uses and practices employed in connection with the Fractora. Defendants would necessarily be aware of the details of methods used and practiced in connection with the Fractora at the time it became aware of the '079 patent, and at that point the clear and unmistakable infringement of the '079 patent by those using and practicing the Fractora, including at least the customers and end users noted above, would necessarily be known by Defendants. Further, upon information and belief, Defendants specifically intend for their customers to perform the acts constituting direct infringement, including through the use of the Fractora. Since Defendants became aware of the '079 patent and thus they necessarily possessed such knowledge and specific intent, their affirmative steps comprising further provision of products, instructions, manuals and support, has necessarily been done with such knowledge and specific intent.

25.     Additionally, or in the alternative, upon information and belief, Defendants contributed to infringement of the '079 patent in this judicial district, the State of California, and elsewhere in the United States, by actions comprising selling and/or offering for sale the Fractora, which at a minimum is an apparatus in practicing

the methods of the '079 patent.  The Fractora contributes to the direct infringement of the '079 patent by customers and/or other end users in this judicial district, the State of California, and elsewhere in the United States.

26.    Upon information and belief, the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '079 patent. The Fractora is not a staple article or commodity of commerce suitable for substantial non-infringing uses, including at least because it is especially made or especially adapted for uses and practices which constitute infringement of the '079 patent.

27.    As noted above, at a minimum, Defendants became aware of the '079 patent by virtue of this Complaint. On information and belief, Defendants' contributory infringement comprises their knowledge that the Fractora is especially made or especially adapted for uses and/or practices which constitute infringement of the '079 patent and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Such knowledge is evidenced by the fact that infringement of the '079 patent from the use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '079 patent and of the details of the uses and practices employed in connection with the Fractora.  It is similarly clear, evident, and unmistakable to anyone aware of both the '079 patent and of the details of the uses and practices employed in connection with the Fractora that it is especially made or especially adapted for uses and/or practices which constitute infringement of the '079 patent and it does not

comprise a staple article or commodity of commerce suitable for substantial non-infringing uses.  Defendants would necessarily be aware of the details of the methods used and practiced in connection with the Fractora at the time it became aware of the '079 patent, and at that point it would necessarily become clear and unmistakable to Defendants that their customers and end users were infringing the '079 patent, that the Fractora is, at a minimum, contributing to such infringement, and that the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '079 patent, and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Since Defendants became aware of the '079 patent they have necessarily possessed such knowledge.

28.     Defendants are thus liable for infringement of the '079 patent pursuant to 35 U.S.C. § 271.

29.     As a result of Defendants' infringing conduct relative to the '079 patent, Defendants have damaged Syneron. Defendants are liable to Syneron in an amount that adequately compensates Syneron for their infringement which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,496,654

30.    United States Patent No. 8,496,654 ("the '654 patent"), entitled "Method and apparatus for fractional skin treatment," issued on July 30, 2013.

31.    Syneron is the present assignee of the entire right, title and interest in and to the '654 patent, including all rights to sue for past and present infringement. Accordingly, Syneron has standing to bring this lawsuit for infringement of the '654 patent.

32.    The various claims of the '654 patent have coverage comprising skin treatment devices.  Said skin treatment devices comprise an applicator tip; a plurality of ground electrodes arranged on the applicator tip, the ground electrodes being configured for contacting epidermis of skin of a patient and being further configured for connection to a circuit for delivering RF energy to the skin; and a plurality of RF application elements arranged in a cluster on the applicator tip between the plurality of ground electrodes, the RF application elements having a combined application element surface area substantially smaller than the surface area of the ground electrodes, wherein the plurality of RF application elements are configured for connection to the circuit for delivering RF energy to the skin, and wherein the plurality of RF application elements in the cluster are free of any ground electrode there between.

33.     Invasix has been and now is infringing at least claims 1 and 19 of the '654 patent by actions comprising making, using, importing, selling and/or offering to sell skin treatment devices comprise an applicator tip; a plurality of ground electrodes arranged on the applicator tip, the ground electrodes being configured for contacting epidermis of skin of a patient and being further configured for connection to a circuit for delivering RF energy to the skin; and a plurality of RF application elements arranged in a cluster on the applicator tip between the plurality of ground electrodes, the RF application elements having a combined application element surface area substantially smaller than the surface area of the ground electrodes, wherein the plurality of RF application elements are configured for connection to the circuit for delivering RF energy to the skin, and wherein the plurality of RF application elements in the cluster are free of any ground electrode there between.  Such devices are referred to by Invasix as the Fractora.  Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

34.     InMode has been and now is infringing at least claims 1 and 19 of the '654 patent by actions comprising using, importing, selling and/or offering to sell skin treatment devices comprise an applicator tip; a plurality of ground electrodes arranged on the applicator tip, the ground electrodes being configured for contacting epidermis of skin of a patient and being further configured for connection to a circuit for delivering

RF energy to the skin; and a plurality of RF application elements arranged in a cluster on the applicator tip between the plurality of ground electrodes, the RF application elements having a combined application element surface area substantially smaller than the surface area of the ground electrodes, wherein the plurality of RF application elements are configured for connection to the circuit for delivering RF energy to the skin, and wherein the plurality of RF application elements in the cluster are free of any ground electrode there between.  Such devices are referred to by Inmode as the Fractora.  Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

35.   An exemplary description of Defendants' infringement of exemplary claim 1 of the '654 Patent is set forth below (claim language in italics):

(a) *A skin treatment device comprising* – see ¶12(a), above.

(b)   *an applicator tip* – The Fractora handheld device uses disposable electrode pin tips (*i.e.*, an electrical energy applicator).  For example:



and

**APPENDIX : CHECKLIST OF SUPPLIES**

- Treatment bed
- BodyTite device
- Fractora handpiece
- Several tips of 20 and 60 pins

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 16.

(c)    *a ground electrode arranged on the applicator tip, the ground electrode being configured for contacting epidermis of skin of a patient and being further configured for connection to a circuit for delivering RF energy to the skin, the ground electrode having a ground electrode surface area* – The Fractora handheld device applicator tip includes ground electrodes on the outermost portions of the applicator tips, for example as shown circled in red in Figure 1, below:



*Figure 1. Fractora Fractional Technology.*

The ground electrodes are configured to contact the subject's surface skin, as shown in Figure 1. The ground electrode is configured for connection to a circuit for delivering RF energy to the skin, the electrical circuit is shown via the purple dotted-lines

extending from the electrode tips through the skin and terminating at the ground electrodes. The ground electrodes comprise surface areas.

(d)    *a plurality of RF application elements arranged on the applicator tip, the RF application elements having a combined application element surface area substantially smaller than the ground electrode surface area, wherein the plurality of RF application elements are configured for connection to the circuit for delivering RF energy to the skin* – As shown in the photograph below, the Fractora applicator tip comprises a plurality of RF electrode tip elements (for example, contained within the blue rectangle) that when combined have a substantially smaller surface area than the ground electrode(s) (highlighted with red rectangles).



The plurality of RF application elements (field of electrode tips) are configured to complete a circuit connection with the ground electrode elements for delivering RF energy to the skin, for example as shown below:

*See*, Fractora Animation, InvasixAesthetics Youtube Channel; http://www.youtube.com/watch?v=W_7bbibKcno.

(e)   *wherein the plurality of RF application elements are free of any ground electrode there between* – The Fractora applicator tip comprises a plurality of ground electrodes positioned on either side (*i.e.*, not between) the RF electrode tip elements, for example as shown in the photograph above.

36.   An exemplary description of Invasix's infringement of exemplary claim 19 of the'654 Patent is set forth below (claim language in italics):

(a)   *A skin treatment device comprising* – see ¶32(a), above.

(b)   *an applicator tip* – see ¶32(b), above.

(c)   *a plurality of ground electrodes arranged on the applicator tip, the ground electrodes being configured for contacting epidermis of skin of a patient and being*

*further configured for connection to a circuit for delivering RF energy to the skin* – As set forth above in ¶¶32(c) and (d), the Fractora comprises a plurality of ground electrodes.  The ground electrodes are configured for connection to a circuit delivering RF energy to the skin, for example as shown below:



*See*, Fractora Animation, InvasixAesthetics Youtube Channel; http://www.youtube.com/watch?v=W_7bbibKcno.

(d) *a plurality of RF application elements arranged in a cluster on the applicator tip between the plurality of ground electrodes, wherein the plurality of RF application elements are configured for connection to the circuit for delivering RF energy to the skin* – see ¶32(d), above showing that the Fractora device comprises a plurality of RF application elements.  Further, as shown below the RF application elements are arranged in a cluster (e.g., a field) between the two ground electrodes:



(e)    *wherein the plurality of RF application elements in the cluster are free of*

*any ground electrode there between* – see ¶32(e), above.

37.    Defendants are thus liable for infringement of the '654 patent pursuant to

35 U.S.C. § 271.

38.    As a result of Defendants' infringing conduct relative to the '654 patent,

Defendants have damaged Syneron. Defendants are liable to Syneron in an amount that

adequately compensates Syneron for their infringement which, by law, cannot be less

than a reasonable royalty, together with interest and costs as fixed by this Court under

35 U.S.C. § 284.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 8,579,896

39.    United States Patent No. 8,579,896 ("the '896 patent"), entitled "Method

and system for invasive skin treatment," issued on November 12, 2013.

40.     Syneron is the present assignee of the entire right, title and interest in and to the '896 patent, including all rights to sue for past and present infringement. Accordingly, Syneron has standing to bring this lawsuit for infringement of the '896 patent.

41.     The various claims of the '896 patent have coverage comprising methods for simultaneously heating a plurality of discrete skin volumes to a coagulation temperature. Such methods comprise applying an applicator to a skin surface, the applicator including at least one electrode having a plurality of spaced apart protruding conducting elements configured to contact the skin surface at a plurality of discrete locations, the conducting elements terminated by tips configured not to penetrate into the skin surface; applying RF energy to the at least one electrode so as to generate an electrical current in the skin to simultaneously heat a plurality of discrete skin volumes to a coagulation temperature, wherein the conducting elements are spaced apart by a distance of at least 1 mm, and applying the applicator to the skin surface results in the conducting elements contacting the skin surface at spaced apart discrete locations.

42.     Invasix has been and now is infringing at least claim 1 of the '896 patent by actions comprising practicing methods comprising methods for simultaneously heating a plurality of discrete skin volumes to a coagulation temperature. Such methods comprise applying an applicator to a skin surface, the applicator including at least one electrode having a plurality of spaced apart protruding conducting elements configured

to contact the skin surface at a plurality of discrete locations, the conducting elements terminated by tips configured not to penetrate into the skin surface; applying RF energy to the at least one electrode so as to generate an electrical current in the skin to simultaneously heat a plurality of discrete skin volumes to a coagulation temperature, wherein the conducting elements are spaced apart by a distance of at least 1 mm, and applying the applicator to the skin surface results in the conducting elements contacting the skin surface at spaced apart discrete locations.  The devices that practice such methods are referred to by Invasix as the Fractora. Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

43.    InMode has been and now is infringing at least claim 1 of the '896 patent by actions comprising practicing methods comprising methods for simultaneously heating a plurality of discrete skin volumes to a coagulation temperature. Such methods comprise applying an applicator to a skin surface, the applicator including at least one electrode having a plurality of spaced apart protruding conducting elements configured to contact the skin surface at a plurality of discrete locations, the conducting elements terminated by tips configured not to penetrate into the skin surface; applying RF energy to the at least one electrode so as to generate an electrical current in the skin to simultaneously heat a plurality of discrete skin volumes to a coagulation temperature, wherein the conducting elements are spaced apart by a distance of at least 1 mm, and

applying the applicator to the skin surface results in the conducting elements contacting the skin surface at spaced apart discrete locations.  The devices that practice such methods are referred to by InMode as the Fractora. Such devices may further comprise the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

44.   An exemplary description of Defendants' infringement of exemplary claim 1 of the'896 Patent is set forth below (claim language in italics):

(a)   *A method for simultaneously heating a plurality of discrete skin volumes to a coagulation temperature, the method comprising* – The Fractora device heats a plurality of skin volumes to a coagulation temperature, for example as shown below:



The Fractora handpiece technology uses fractional RF energy delivered through pins that may be used for ablation (black), coagulation (white), and sub-necrotic heating (red) at various degrees, as presented in Figure 1. Using lower fluences at each pin, the non-ablative results of fractional infrared lasers or fractional erbium YAG lasers can be simulated. At higher powers, the deep penetration of the energy creates clinical treatment effects of CO2 with the addition of non-ablative, non-coagulative dermal heating that can be used to better address the clinical issues of wrinkles, laxity, texture and scars, both on the face and on the neck and body skin.

*Figure 1. Fractora Fractional Technology.*

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 5

(b)   *applying an applicator to a skin surface, the applicator including at least one electrode having a plurality of spaced apart protruding conducting elements*

*configured to contact the skin surface at a plurality of discrete locations, the conducting elements terminated by tips configured not to penetrate into the skin surface* – see ¶32(b) above describing the applicator tip of the Fractora device which may be applied to the skin surface.  The applicator tip comprises a plurality of electrodes (*see, e.g.*, ¶¶32(c) and (d) above) and a plurality of conducting elements configured to contact the skin surface at a plurality of discrete locations (see, e.g., ¶¶32(d) and (d) above).  The tips of the Fractora device are configured no to penetrate into the skin, for example as shown below:



(c)      *applying RF energy to the at least one electrode so as to generate an electrical current in the skin to simultaneously heat a plurality of discrete skin volumes to a coagulation temperature* – The Fractora hand piece is capable of delivering RF energy (*e.g.*, electrical current) to a subject's surface skin so as to simultaneously heat a plurality of discrete skin volumes to a coagulation temperature, for example as shown below:

The Fractora handpiece technology uses fractional RF energy delivered through pins that may be used for ablation (black), coagulation (white), and sub-necrotic heating (red) at various degrees, as presented in Figure 1. Using lower fluences at each pin, the non-ablative results of fractional infrared lasers or fractional erbium YAG lasers can be simulated. At higher powers, the deep penetration of the energy creates clinical treatment effects of $CO_2$ with the addition of non-ablative, non-coagulative dermal heating that can be used to better address the clinical issues of wrinkles, laxity, texture and scars, both on the face and on the neck and body skin.



*Figure 1. Fractora Fractional Technology.*

(d)      *wherein the conducting elements are spaced apart by a distance of at least 1 mm, and applying the applicator to the skin surface results in the conducting elements contacting the skin surface at spaced apart discrete locations* –  The Fractora device comprises a plurality of conducting elements (*see, e.g.*, ¶40(b) above).  As shown below, the conducting elements are spaced at least 1mm apart:



45.     Additionally, or in the alternative, upon information and belief, Defendants have induced infringement of the '896 patent in this judicial district, the State of California and elsewhere in the United States, by actions comprising intentionally inducing the direct infringement of the '896 patent by at least their customers and other end users of the Fractora.  Such direct infringement comprises use of the Fractora by such customers and other end users.  Upon such information and belief, such inducement comprises aiding, abetting, and encouraging the infringing use of the Fractora, including by providing manuals and instructions.

46.     Upon information and belief, Defendants' induced infringement has occurred at least since they became aware of the '896 patent.   At a minimum, Defendants became aware of the '896 patent at least by virtue of this Complaint.

47.     Further, on information and belief, Defendants' inducement of such direct infringement comprises their knowledge that the induced acts constitute direct infringement of the '896 patent by such customers and end users, and also their specific intent that such customers and end users of the Fractora infringe the '896 patent.  Such knowledge and specific intent is evidenced by the fact that infringement of the '896 patent from use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '896 patent and of the details of the uses and practices employed in connection with the Fractora.  Defendants would necessarily be aware of the details of methods used and practiced in connection with the Fractora at the time it became aware of the '896 patent, and at that point the clear and unmistakable infringement of the '896 patent by those using and practicing the Fractora, including at least the customers and end users noted above, would necessarily be known by Defendants.   Further, upon information and belief, Defendants specifically intend for their customers to perform the acts constituting direct infringement, including through the use of the Fractora. Since Defendants  became aware of the '896 patent and thus they necessarily possessed such knowledge and specific intent, their affirmative steps comprising further provision of products, instructions, manuals and support, has necessarily been done with such knowledge and specific intent.

48.     Additionally,  or  in  the  alternative,  upon  information  and  belief, Defendants have contributed to infringement of the '896 patent in this judicial district,

the State of California, and elsewhere in the United States, by actions comprising selling and/or offering for sale the Fractora, which at a minimum is an apparatus in practicing the methods of the '896 patent.  The Fractora contributes to the direct infringement of the '896 patent by customers and/or other end users in this judicial district, the State of California, and elsewhere in the United States.

49.    Upon information and belief, the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '896 patent. The Fractora is not a staple article or commodity of commerce suitable for substantial non-infringing uses, including at least because it is especially made or especially adapted for uses and practices which constitute infringement of the '896 patent.

50.    As noted above, at a minimum, Defendants  became aware of the '896 patent at least by virtue of this Complaint. On information and belief, Defendants' contributory infringement comprises their knowledge that the Fractora is especially made or especially adapted for uses and/or practices which constitute infringement of the '896 patent and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Such knowledge is evidenced by the fact that infringement of the '896 patent from the use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '896 patent and of the details of the uses and practices employed in connection with the Fractora.  It is similarly clear, evident, and unmistakable to anyone aware of both the '896 patent and of the details of the uses and

practices employed in connection with the Fractora that it is especially made or especially adapted for uses and/or practices which constitute infringement of the '896 patent and it does not comprise a staple article or commodity of commerce suitable for substantial non-infringing uses.  Defendants would necessarily be aware of the details of the methods used and practiced in connection with the Fractora at the time it became aware of the '896 patent, and at that point it would necessarily become clear and unmistakable to Defendants that their customers and end users were infringing the '896 patent, that the Fractora is, at a minimum, contributing to such infringement, and that the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '896 patent, and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Since Defendants became aware of the '896 patent it has necessarily possessed such knowledge.

51.   Defendants are thus liable for infringement of the '896 patent pursuant to 35 U.S.C. § 271.

52.   As a result of Defendants' infringing conduct relative to the '896 patent, Defendants have damaged Syneron. Invasix is liable to Syneron in an amount that adequately compensates Syneron for their infringement which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 9,108,036

53.     United States Patent No. 9,108,036 ("the '036 patent"), entitled "Method and apparatus for fractional skin treatment," issued on August 18, 2015.

54.     Syneron is the present assignee of the entire right, title and interest in and to the '036 patent, including all rights to sue for past and present infringement. Accordingly, Syneron has standing to bring this lawsuit for infringement of the '036 patent.

55.     The various claims of the '036 patent have coverage involving skin treatment devices comprising: a housing; and at least one processor within the housing and configured to control RF energy supplied to a removable applicator tip; said applicator tip having a plurality of electrodes configured for contacting a stratum corneum layer of skin external to a patient's body, the plurality of electrodes including: a plurality of voltage to skin elements of a first size, arranged in a cluster, and being further configured for connection to a circuit for delivering RF energy to cause fractional skin treatment; and a plurality of electrodes sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster, and wherein the cluster of voltage to skin elements are free of any portion of the larger sized electrode there between; and wherein the at least one processor is configured to control RF energy in a manner such that energy is applied to the stratum corneum layer through the plurality of voltage to skin elements of the first size, and such that energy is collected

– 34 –

from the stratum corneum on the at least one electrode sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster.

56.   Invasix has been and now is infringing at least claims 1 of the '036 patent by actions comprising making, using, importing, selling and/or offering to sell skin treatment devices comprising: a housing; and at least one processor within the housing and configured to control RF energy supplied to a removable applicator tip; said applicator tip having a plurality of electrodes configured for contacting a stratum corneum layer of skin external to a patient's body, the plurality of electrodes including: a plurality of voltage to skin elements of a first size, arranged in a cluster, and being further configured for connection to a circuit for delivering RF energy to cause fractional skin treatment; and a plurality of electrodes sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster, and wherein the cluster of voltage to skin elements are free of any portion of the larger sized electrode there between; and wherein the at least one processor is configured to control RF energy in a manner such that energy is applied to the stratum corneum layer through the plurality of voltage to skin elements of the first size, and such that energy is collected from the stratum corneum on the at least one electrode sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster.  Such devices are referred to by Invasix as the Fractora. Such devices may further comprise

the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

57.    InMode has been and now is infringing at least claims 1 of the '036 patent by actions comprising using, importing, selling and/or offering to sell skin treatment devices comprising: a housing; and at least one processor within the housing and configured to control RF energy supplied to a removable applicator tip; said applicator tip having a plurality of electrodes configured for contacting a stratum corneum layer of skin external to a patient's body, the plurality of electrodes including: a plurality of voltage to skin elements of a first size, arranged in a cluster, and being further configured for connection to a circuit for delivering RF energy to cause fractional skin treatment; and a plurality of electrodes sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster, and wherein the cluster of voltage to skin elements are free of any portion of the larger sized electrode there between; and wherein the at least one processor is configured to control RF energy in a manner such that energy is applied to the stratum corneum layer through the plurality of voltage to skin elements of the first size, and such that energy is collected from the stratum corneum on the at least one electrode sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster.  Such devices are referred to by InMode as the Fractora. Such devices may further comprise

the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite and/or Fractora platforms.

58.   An exemplary description of Defendants' infringement of exemplary claim 1 of the '036 Patent is set forth below (claim language in italics):

(a)   *A skin treatment device, comprising* – Fractora is a handheld device that uses fractional RF energy delivered through removable, disposable pin tips that may be used for ablation of the surface skin on the body of a customer receiving skin rejuvenation treatments. The Fractora handheld device is provided power through connection to the BodyTite device.  According to the Invasix BodyTite Clinical Manual, Fractora is a hand piece that is used within the BodyTite platform:

Consequently, Invasix has developed the Fractora handpiece that can be used on the BodyTite platform to give a non -invasive solution to facial treatments and complement the existing invasive techniques.

*See*, Invasix BodyTite Clinical Manual (April 2011), p. 5.

(b)   *an applicator tip* – see ¶32(b), above.

(c)   *a plurality of electrodes configured for contacting a stratum corneum layer of skin external to a patient's body, the plurality of electrodes including* – The Fractora handheld device applicator tip includes ground electrodes on the outermost portions of the applicator tips, for example as shown circled in red in Figure 1, below:



*Figure 1. Fractora Fractional Technology.*

The ground electrodes are configured to contact the subject's surface skin, including the stratum corneum, as shown in Figure 1.  The ground electrodes of the Fractora device are also shown below (as indicated by the red boxes):



(d)    *a plurality of voltage to skin elements of a first size, arranged in a cluster, and being further configured for connection to a circuit for delivering RF energy to cause fractional skin treatment* – see ¶32(d) above re pins and ¶33(e) above re arranged in a cluster.

(e)    *a plurality of electrodes sized substantially larger than the first size and arranged at a periphery of the cluster and spaced from the cluster, and wherein the cluster of voltage to skin elements are free of any portion of the larger sized electrode*

*there between* – The ground electrodes of the Fractora device are sized substantially larger than the skin elements (*e.g.*, the pins) and are arranged at the periphery of the cluster, for example as shown below:



59.    Additionally, or in the alternative, upon information and belief, Defendants have induced infringement of the '036 patent in this judicial district, the State of California and elsewhere in the United States, by actions comprising intentionally inducing the direct infringement of the '036 patent by at least their customers and other end users of the Fractora.  Such direct infringement comprises use of the Fractora by such customers and other end users.  Upon such information and belief, such inducement comprises aiding, abetting, and encouraging the infringing use of the Fractora, including by providing manuals and instructions.

60.    Upon information and belief, Defendants' induced infringement has occurred at least since they became aware of the '036 patent.  At a minimum, Defendants became aware of the '036 patent at least by virtue of this Complaint.

61.     Further, on information and belief, Defendants' inducement of such direct infringement comprises their knowledge that the induced acts constitute direct infringement of the '036 patent by such customers and end users, and also their specific intent that such customers and end users of the Fractora infringe the '036 patent.  Such knowledge and specific intent is evidenced by the fact that infringement of the '036 patent from use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '036 patent and of the details of the uses and practices employed in connection with the Fractora.  Defendants would necessarily be aware of the details of methods used and practiced in connection with the Fractora at the time it became aware of the '036 patent, and at that point the clear and unmistakable infringement of the '036 patent by those using and practicing the Fractora, including at least the customers and end users noted above, would necessarily be known by Defendants.  Further, upon information and belief, Defendants specifically intend for their customers to perform the acts constituting direct infringement, including through the use of the Fractora. Since Defendants became aware of the '036 patent and they necessarily possessed such knowledge and specific intent, their affirmative steps comprising further provision of products, instructions, manuals and support, has necessarily been done with such knowledge and specific intent.

62.     Additionally, or in the alternative, upon information and belief, Defendants contributed to infringement of the '036 patent in this judicial district, the

State of California, and elsewhere in the United States, by actions comprising selling and/or offering for sale the Fractora, which at a minimum is an apparatus in practicing the methods of the '036 patent.  The Fractora contributes to the direct infringement of the '036 patent by customers and/or other end users in this judicial district, the State of California, and elsewhere in the United States.

63.    Upon information and belief, the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '036 patent.  The Fractora is not a staple article or commodity of commerce suitable for substantial non-infringing uses, including at least because it is especially made or especially adapted for uses and practices which constitute infringement of the '036 patent.

64.    As noted above, at a minimum, Defendants became aware of the '036 patent at least by virtue of this Complaint.  On information and belief, Defendants' contributory infringement comprises their knowledge that the Fractora is especially made or especially adapted for uses and/or practices which constitute infringement of the '036 patent and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Such knowledge is evidenced by the fact that infringement of the '036 patent from the use of the Fractora is clear, evident, and unmistakable to anyone aware of both the '036 patent and of the details of the uses and practices employed in connection with the Fractora.  It is similarly clear, evident, and unmistakable to anyone aware of both the '036 patent and of the details of the uses and

practices employed in connection with the Fractora that it is especially made or especially adapted for uses and/or practices which constitute infringement of the '036 patent and it does not comprise a staple article or commodity of commerce suitable for substantial non-infringing uses. Defendants would necessarily be aware of the details of the methods used and practiced in connection with the Fractora at the time they became aware of the '036 patent, and at that point it would necessarily become clear and unmistakable to Defendants that their customers and end users were infringing the '036 patent, that the Fractora is, at a minimum, contributing to such infringement, and that the Fractora is especially made or especially adapted for uses and practices which constitute infringement of the '036 patent, and it is not a staple article or commodity of commerce suitable for substantial non-infringing uses. Since Defendants became aware of the '036 patent they have necessarily possessed such knowledge.

65. Defendants are thus liable for infringement of the '036 patent pursuant to 35 U.S.C. § 271.

As a result of Defendants' infringing conduct relative to the '036 patent, Defendants have damaged Syneron. Defendants are liable to Syneron in an amount that adequately compensates Syneron for their infringement which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

WHEREFORE, Syneron respectfully requests that this Court enter:

1.     A judgment in favor of Syneron that Defendants have infringed, directly and/or indirectly, the '232, '079, '654, '896 and '036 patents;

2.     A judgment that Defendants' infringement is and/or has been willful and objectively reckless;

3.     A permanent injunction enjoining Invasix and InMode, and their officers, directors, employees, agents, affiliates and all others acting in active concert therewith from infringing the '232, '079, '654, '896 and '036 patents;

4.     A judgment and order requiring Defendants to pay Syneron its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the 'the '232, '079, '654, '896 and '036 patents as provided under 28 U.S.C. § 284;

5.     An award to Syneron for enhanced damages as provided under 35 U.S.C. § 284;

6.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Syneron its reasonable attorneys' fees;

7.     Any and all other relief to which Syneron may show itself to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:    January 28, 2016

Respectfully submitted,

COLLINS EDMONDS SCHLATHER
& TOWER, PLLC

/s/ *John J. Edmonds*

John J. Edmonds – LEAD COUNSEL
State Bar No. 274200

Attorney for Plaintiff
SYNERON MEDICAL LTD.

Of counsel:
Stephen F. Schlather (PHV pending)
sschlather@ip-lit.com.com
Shea N. Palavan (PHV pending)
spalavan@ip-lit.com.com
COLLINS EDMONDS SCHLATHER & TOWER, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 364-5291
Facsimile: (832) 415-2535