1  John J. Edmonds (SBN 274200)
   jedmonds@ip-lit.com
2  COLLINS EDMONDS SCHLATHER &
   TOWER, PLLC
3  1851 East First Street, Suite 900
   Santa Ana, CA 92705
4  Tel: (951)708-1237; Fax: (951)824-7901

5  Stephen F. Schlather (admitted *pro hac*
   *vice*)
6  sschlather@ip-lit.com
   Shea N. Palavan (admitted *pro hac vice*)
7  spalavan@ip-lit.com
   COLLINS EDMONDS SCHLATHER &
8  TOWER, PLLC
   1616 S. Voss Rd., Suite 125
9  Houston, TX 77057
   Tel: (281)501-3425; Fax: (832)415-2535
10
   Attorneys for Plaintiff,
11 SYNERON MEDICAL LTD.

DURIE TANGRI LLP
SONAL N. MEHTA (SBN 222086)
smehta@durietangri.com
RYAN M. KENT (SBN 220441)
rkent@durietangri.com
ADAM R. BRAUSA (SBN 298754)
abrausa@durietangri.com
LEERON MORAD (SBN 284771)
lmorad@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:  415-362-6666
Facsimile:  415-236-6300

Attorneys for Defendants
INVASIX, INC. and INMODE MD LTD.

12

13

14                 IN THE UNITED STATES DISTRICT COURT

15            FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                          SOUTHERN DIVISION

|  |  |
|---|---|
| 17  SYNERON MEDICAL LTD., | Case No. 8:16-cv-00143-DOC-KES |
| 18                  Plaintiff, | **JOINT REPORT OF THE PARTIES AND DISCOVERY PLAN PURSUANT TO FED. R. CIV. P. 26(F)** |
| 19       v. | Judge: Honorable David O. Carter |
| 20  INVASIX, INC. and INMODE MD LTD. D/B/A INMODE MD D/B/A INMODE | Am. Complaint Served: April 26, 2016 |
| 21  AESTHETIC SOLUTIONS D/B/A | Discovery Cut-Off: TBD |
| 22  INMODE, | Motion Cut-Off:    TBD |
| 23                  Defendants. |  |

24

25

26

27

28

Plaintiff, Syneron Medical Ltd. ("Syneron"), and Defendants, Invasix, Inc. and Inmode MD Ltd. D/B/A Inmode MD D/B/A Inmode Aesthetic Solutions D/B/A Inmode (collectively, "Defendants" or "Invasix"), hereby respectfully file this joint report of the parties and discovery plan pursuant to Fed. R. Civ. P. 26(f), L.R. 26-1, and the Court's Order Setting Scheduling Conference dated May 18, 2016 (Doc. No. 27).

**1. Factual Summary of the Case and Claims and Defenses**

This is a patent infringement case. In a four count amended complaint, Plaintiff alleges infringement by all Defendants of United States Patent Nos. 6,148,232; 6,615,079; 8,496,654; and 9,108,036 (collectively, the "Patents-in-Suit"). The Patents-in-Suit claim methods and devices for treatment of the skin using, *inter alia*, electrodes and an electric current.

Plaintiff's Statement

Plaintiff alleges that each Defendant makes, uses, sells, offers for sale, and/or imports into the United States, devices and/or apparatuses, including, *e.g*., the Fractora device and the Fractora hand piece when used in conjunction with and/or when connected to the InMode, BodyTite, and/or Fractora platforms that infringe each of the Patents-in-Suit. Plaintiff further alleges that each Defendant is and has been inducing others, including at least users of accused methods and/or devices and/or resellers of the devices to infringe the Patents-in-Suit. Plaintiff also alleges that each Defendant is and has been contributing to the infringement of others, including without limitation said resellers and/or users. Plaintiff is seeking damages, enhanced damages, an exceptional case finding, attorneys' fees, and costs from each Defendant, as well as a permanent injunction enjoining future infringement by all Defendants.

Invasix's Statement

Invasix denies Syneron's allegations of infringement because, among other things, the Patents-in-Suit are invalid as anticipated and/or obvious in light of the prior art, and Invasix does not infringe the Patents-in-Suit when the asserted claims are properly construed. Moreover, Invasix does not induce or contribute to any infringement of the

Patents-in-Suit.   Given the strength of Invasix's defenses, it has sought declaratory judgment of non-infringement and invalidity regarding each of the Patents-in-Suit and a determination that this is an exceptional case.

**2.   Synopsis Of The Principal Issues In The Case**

The principal issues in the case are the proper construction of certain terms in the asserted claims of the Patents-in-Suit, whether any of the Defendants have infringed any asserted claims of any of the Patents-in-Suit, whether the asserted claims of the Patents-in-Suit are invalid, and the proper amount of damages, if any.

**3.   Additional Parties And Amendment Of Pleadings**

At this time, the parties do not anticipate the addition of parties or that amendment of the pleadings will be necessary, although the parties reserve the right to amend pleadings for good cause as the case progresses subject to the Court's rulings and schedule.

**4.   Issues Which May Be Determined By Motion**

Plaintiff's Statement

Claim construction is a question of law to be determined by the Court.   The parties anticipate that the Court will entertain claim construction briefing and conduct a hearing on such matters.   Once any disputed claim terms have been construed the Court, other issues may be ripe for dispositive motions.

Defendants' speculation that "early, focused claim construction and summary judgment proceedings may result in narrowing of the parties' disputes" relative to at least two of the four patents-in-suit is nothing more than mere speculation in support of Defendants' ill-founded attempt to seek disposition of factual disputes prior to reasonable discovery occurring.

As noted below, Plaintiff opposes Defendants' attempt to have this governed by the Local Patent Rules of the Northern District of California, including because the Federal Rules of Procedure as written provide for reasonable and adequate discovery procedures, and because Defendants, whose counsel are located in the Northern District, will surely seek to direct this Court as to how it should handle the minutia of this case based upon their

JOINT REPORT OF THE PARTIES AND DISCOVERY PLAN PURSUANT TO
FED.R.CIV.P. 26(F) / CASE NO. 8:16-CV-00143-DOC-KES

1   contention as to how a Court in the Northern District would rule based upon their selective

2   interpretation of Northern District case precedents interpreting Northern District local rules.

3   This case was not filed in the Northern District nor has there been any effort to transfer

4   venue to the Northern District.  There is no good cause, and indeed no good reason, for

5   Defendants to impose their no doubt selective reading of Northern District precedents upon

6   this Court's management of this case, nor is there any just reason for hasty summary

7   determinations of factual issues in the absence of reasonable discovery.

8   Invasix's Statement

9        Invasix respectfully submits that this is a case in which early, focused claim

10  construction and summary judgment proceedings may result in significant narrowing of the

11  parties' disputes including, in Invasix's view, a summary determination of noninfringement

12  on at least two of four patents-in-suit.  Accordingly, as described further below, Invasix

13  proposes an initial exchange of contentions to take place before discovery, as provided by

14  the N.D. Cal. Local Patent Rules.  After this exchange of contentions Invasix requests a

15  further conference with the Court to discuss possible approaches for streamlining the case

16  with that information in hand.  Subject to the Court's guidance, issues for discussion would

17  include, e.g.: early disposition of certain terms that are amenable to early claim construction

18  that would be dispositive of all or a significant portion of the claims as to particular patents

19  or the case as a whole or the phasing of discovery or other additional limitations of

20  discovery.  Invasix proposes that the parties would meet and confer regarding streamlining

21  or case management following the exchange of contentions and submit a CMC Statement

22  in advance of said further CMC to help frame possible case management strategies that

23  would best fit the disputes that are defined by those contentions.

24  **5.    Settlement Procedures**

25       To date, the parties have not engaged in settlement discussions.  Pursuant to Local

26  Rule 16-15.4, the parties believe that private mediation would be the most appropriate

27  settlement procedure and respectfully recommend it to the Court.  The parties will work

28  together to select an acceptable mediator, and, if they cannot reach agreement, will submit

competing lists of potential mediators for the Court's consideration.

## 6.   Discovery Plan

Agreed-Upon Provisions

The parties have agreed to negotiate in good-faith a protective order for this case. The parties will submit a proposed protective order (and if necessary, identification of disputed positions) for the Court's review and approval by August 1, 2016.  The parties also agree that electronic discovery should be phased generally in accordance with the Federal Circuit Advisory Council's Model Order Regarding E-Discovery in Patent Cases.   The parties will submit a proposed e-discovery order (and if necessary, identification of disputed positions) for the Court's review and approval by August 1, 2016.

Each expert shall be deposed for up to 7 hours per opening or rebuttal report submitted by that expert.   The parties will meet and confer concerning any additional deposition time necessary for expert reports such as supplemental or reply expert reports on a case by case basis without waiver to either party's right to move to strike any such supplemental or reply report.

The parties agree to work together to adjust discovery limits as reasonable and necessary under the circumstances.[1]  Failure to exercise reasonable efficiency in conducting discovery shall not support a request for adjustment to the discovery limits. Notwithstanding these limits, Fed. R. Civ. P. 26 shall govern the nature and extent of discovery in this case.

Agreed Discovery Limitations

The parties agree to modest adjustments to the discovery limits imposed by the Federal Rules of Civil Procedure.   These modest adjustments are intended to ensure that discovery is appropriately-tailored and proportional to the needs of the case.

---

[1] Because certain named inventors have knowledge about multiple patents and are expected to have relevant information on other subjects including prior art potentially embodying products, Invasix may request additional time to depose the named inventors if it appears that seven hours will not be sufficient for their depositions.  Invasix will meet and confer with Syneron as appropriate.

(1) Requests for Admission:

Each party may serve up to 75 requests for admission.  These limits do not apply to requests for admission used solely for authentication, issues of hearsay, exceptions to hearsay and issues relating to the best evidence rule and its exceptions.  The parties will discuss a reasonable approach to those exceptions as the case progresses.

(2) Depositions

The parties agree that each side be permitted to take up to 120 hours of deposition testimony (party and nonparty), not to exceed 18 depositions per side in total.  The parties further agree that each side may take up to 28 hours of deposition of the other side pursuant to Rule 30(b)(6).  The parties would of course work in good faith to allow additional depositions beyond these limits if there is good cause to do so.  These limitations are in addition to the above expert deposition limitations.

Plaintiff's Statement

Other than as agreed above, Plaintiff proposes that discovery proceed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules and that no further modifications or limitations are necessary.  As noted above, the parties anticipate that the Court will entertain claim construction briefing and conduct a hearing on such matters.  The Court may schedule briefing and a hearing on a schedule to its liking after there has been a reasonable opportunity for discovery in this case.

As noted below, Plaintiff opposes Defendants' attempt to have this governed by the Local Patent Rules of the Northern District of California, including because the Federal Rules of Procedure as written provide for reasonable and adequate discovery procedures, and because Defendants, whose counsel are located in the Northern District, will surely seek to direct this Court as to how it should handle the minutia of this case based upon their contention as to how a Court in the Northern District would rule based upon their selective interpretation of Northern District case precedents interpreting Northern District local rules.  This case was not filed in the Northern District nor has there been any effort to transfer venue to the Northern District.  There is no good cause, and indeed no good reason, for

1    Defendants to impose their no doubt selective reading of Northern District precedents upon

2    this Court's management of this case, nor is there any just reason for hasty summary

3    determinations of factual issues in the absence of reasonable discovery.

4        The notion that Defendants are somehow in the dark about Plaintiffs' theories of this

5    case is absurd.  Plaintiffs' Amended Complaint greatly exceeds the level of detail required

6    by the Federal Rules.  This very high level of detail was provided to provide reasonable

7    notice to Defendants in advance of fact discovery.  Defendants' suggestion that Plaintiff

8    might not be "up front" with discovery or might "play games" in discovery is wholly

9    unfounded.

10       Cases outside of the Northern District which have adopted the Patent Local Rules of

11   the Northern District in accordance with an agreement by the parties are inapplicable to this

12   case and others in which no such agreement was reached.

13       Further, despite Defendants' inexcusable mischaracterization of Plaintiff's position

14   (*i.e.*, "that there need be no exchange of contentions or schedule for claim construction

15   disclosures"), Plaintiff has merely proposed that this case proceed under a schedule set by

16   this Court pursuant to the Federal Rules which provide multiple vehicles for discovery of

17   contentions.  Defendants have set forth no explanation of why they could not obtain the

18   "theories of infringement or claims asserted" they purportedly seek through the normal

19   discovery process – as is done in a myriad of courts around the country, including in this

20   Court, that have not adopted local patent rules.  For instance, this Court has previously

21   rejected proposals to adopt the very rules that Defendants have proposed for this case.  *See,*

22   *e.g.,* <u>Wavestream Corp. v. CAP Wireless Inc.</u>, CV 05-4254 SJO PLAX, 2007 WL 4351597,

23   at *1 (C.D. Cal. Feb. 13, 2007);[2] *Diagnostic Systems Corp. v. Symantec Corp.* (C.D. Cal.,

24

25   [2] Defendants object below to Plaintiff's citation to *Wavestream* because they allege that
     more recently Judge Otero adopted the Northern District Local Patent Rules over the
26   objection of a Plaintiff.  Defendants are mistaken.  In the *Cascades Projection* case cited by
     Defendants, both sides had agreed to deadlines consistent with the Northern District Rules.
27   *Cascades Projection LLC. v. Epson America, Inc.*, No. 2:15-cv-258 SJO (C.D. Cal. May
     15, 2015), ECF No. 47, pp. 5-6.  The ruling by Judge Otero erroneously relied upon by
28

6

June 5, 2009, No. SACV 061211DOCANX) 2009 WL 1607717, at *2 (this Court preferred "a more focused approach to 'rule as we go[,]' adopting only the specific local patent rules-or the principles embodied by those rules-based upon a perceived need. (7/23/07 Reporter's Transcript at 41:5-11.)").[3]

Defendants' argument that adopting the Local Patent Rules of the Northern District would somehow minimize "ancillary" disputes is unfounded.  Adoption of the rules of another court will very likely lead to disputes over whether that court's rules were complied with and what relief, if any, that court would afford if this were the case.  Also, Defendants have no basis to contend that Local Patent Rule disclosures are any more clear or certain than normal discovery responses such as contention interrogatories, depositions and expert disclosures.  The parties agree there is a "significant body of case law interpreting the Patent Local Rules" of the Northern District.   Defendants' suggestion that imposing this "significant body" of case law on this Court would somehow "simplify, "add clarity to" or "streamline" this case is unfounded.  Sometimes that case laws is not uniform.  Although different judges in the Northern District may have their own views of those rules and their flexibility, adoption of the rules outside the district almost invariably leads to different citations to different rulings urging the outside court that they must be followed. Fundamentally, Defendants merely seek to force their view of the Northern District Local Rules on this Court and this case and to force their desired outcome of this case without full and fair discovery taking place.

Defendants' request for a "presumptive limit of 10 hours for named inventors" is unwarranted and abusive, including because it would require inventors to set aside two days

---

Defendants merely resolved certain disputes about how the Northern District rules would apply and, as Defendants correctly note, it imposed a hybrid schedule and procedures. *Id.*, ECF No. 50.

[3] To the extent Invasix is suggesting that the *Diagnostic Systems* case involved this Court's adoption of Local Rules of the Northern District, that suggestion is unsupported by this Court's scheduling order entered in that case. *Id.* at Doc 102.  Further, the extent of those parties' agreement on certain deadlines is not apparent from the public record, since their Rule 26(f) report is not available on PACER. *See, id.* at Doc. 99.

1   for a deposition which should only take one 7 hour day.  Should there be good cause to

2   extend an inventor or other deposition beyond the normal 7 hour limit, Plaintiff will work

3   in good faith with Defendants to attempt to amicably address such issues without the need

4   for court intervention.

5          Defendants' suggestion that Plaintiff's counsel's familiarity with the Local Patent

6   Rules in Texas somehow puts them on equal footing of knowledge of the Local Patent Rules

7   of the Northern District is unfounded.  Not surprisingly, Defendants only move for

8   imposition of a specific set of Local Patent Rules – those of the Northern District of

9   California.  Yet, if Defendants' unfounded relief was granted, Plaintiff would instantly be

10  charged with knowledge of a set of Local Patent Rules in a district in which this case was

11  not filed and is not pending.

12         Defendants' allegations that Plaintiff might "play games" in discovery or that the

13  parties might "talk past each other in briefing" are unfounded and erroneous.  Similarly,

14  Defendants' claim that Plaintiff's proposal to proceed under the Federal Rules "threatens to

15  increase needless discovery disputes and delay the resolution of issues in this case" is belied

16  by the fact that, despite having recently served interrogatories on Plaintiff, Defendant did

17  not seek information related to either the claims being asserted by Plaintiff nor Plaintiff's

18  infringement contentions.  Were Defendants actually interested in the prompt resolution of

19  this case, they could have and should have sought the information they contend they need

20  to prosecute this case.

21         Defendants' allegations that contention discovery is inadequate is unfounded and

22  erroneous.  Defendants fail to appreciate that many patent cases, and certainly multitudes

23  of complex civil cases, have discovery conducted under rules other than the Northern

24  District Local Patent Rules, or for that matter under any Local Patent Rules.  Defendants'

25  argument that it would be "unfair and prejudicial" to litigate a patent case except under the

26  Northern District Local Patent rules is an unfounded view not shared by judges or litigants

27  throughout the country.

28  Invasix's Statement

JOINT REPORT OF THE PARTIES AND DISCOVERY PLAN PURSUANT TO
FED.R.CIV.P. 26(F) / CASE NO. 8:16-CV-00143-DOC-KES

1

*Discovery Limitations*

2  Invasix agrees that the limits imposed by the Federal Rules of Civil Procedure should

3  apply in this case, with some adjustments.  These modest adjustments are intended to ensure

4  that discovery is appropriately-tailored and proportional to the needs of the case.

5  *Patent Local Rules*

6  Invasix proposes that the Court apply the Patent Local Rules of the Northern District

7  of California in this case.  The parties and the Court would benefit from the clarity and

8  certainty that such a schedule and mandatory contention disclosures would provide.  In

9  particular, the exchange of contentions and clear schedule for claim construction

10  proceedings will help focus the parties' disputes and facilitate timely and efficient

11  resolution of the issues in this case, while helping to minimize ancillary disputes that might

12  otherwise take the Court's time.

13   "The Patent Local Rules . . . are designed specifically to require parties to crystallize

14  their theories of the case early in the litigation . . . ."  *Tokai Corp. v. Easton Enters. Inc.*,

15  2009 WL 2047845, at *2 (C.D. Cal. July 8, 2009) (quotations omitted); *O2 Micro Int'l Ltd.*

16  *v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006).  There are numerous

17  cases—including from this district—adopting and interpreting these Rules. *E.g.*, *Kinglite*

18  *Holdings Inc. v. Micro-Star Int'l Co.*, 2015 WL 6437836, at *1 & n.2 (C.D. Cal. Oct. 16,

19  2015); *Sung v. Shinhan Diamond Am., Inc.*, No. 2:14-cv-530 MFW (C.D. Cal. June 9,

20  2015), ECF No. 83; *Mitsubishi Elec. Corp. v. Sceptre, Inc.*, 2015 WL 2369557 (C.D. Cal.

21  May 18, 2015); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2005 WL 2043047

22  (N.D. Cal. Aug. 24, 2005); *Nano-Second Tech. Co. v. Dynaflex Int'l*, 2012 WL 2077253

23  (C.D. Cal. June 6, 2012); *MyMedicalRecords, Inc. v. Walgreen Co.*, 2013 WL 6834639

24  (C.D. Cal. Dec. 23, 2013); *Blue Spike, LLC v. Adobe Sys., Inc.*, 2015 WL 335842 (N.D.

25  Cal. Jan. 26, 2015).[4]  The significant body of case law interpreting the Patent Local Rules

26

27  [4]   Syneron's reliance on *Wavestream Corp. v. CAP Wireless Inc.*, No. 05-cv-4254 SJO

(C.D. Cal.), is misplaced.  That case was decided by Judge Otero in 2005.  Since 2005,

28  Judge Otero has adopted the patent local rules of the Northern District of California in other

will efficiently guide this complex case towards resolution.[5]

In contrast, Syneron's proposal (which is that interrogatories are sufficient and that there need be no exchange of contentions or schedule for claim construction disclosures) threatens to increase needless discovery disputes and delay the resolution of issues in this case for at least the following three reasons.

*First*, Syneron's proposal provides no assurance that Syneron will provide detailed infringement contentions without Invasix having to seek an order by the Court.  All too often parties play games with initial responses to interrogatories, providing scant information and then require the other party to chase more substantive answers.  Invasix should not have to fight to learn precisely what Syneron's accuse of infringement on an element-by-element basis as well as under what theory are they alleged to infringe.  Indeed, the fact that Syneron believes the information in its Complaint is sufficient to describe its infringement contention only reinforces the need for mandated infringement contentions.

---

cases.  For example, in *Cascades Projection LLC. v. Epson America, Inc.*, No. 2:15-cv-258 SJO (C.D. Cal. May 15, 2015), ECF No. 50, the defendants proposed, and the plaintiff opposed, applying the patent local rules of the Northern District of California.  Judge Otero agreed with the defendants' proposal and adopted the patent local rules, subject to certain exceptions tailored to the case that the parties did not dispute.   Contrary to Syneron's argument, the dispute in the case was not about "how" to apply to Patent Local Rules—the plaintiff in *Cascades Projection* flatly opposed applying them: "Plaintiff believes that it is unnecessary to apply the Patent Local Rules." *Id.* ECF No. 47, at 12.  The case is a prime example of the court's continued flexibility in managing the case, even when applying the Patent Local Rules.

[5]   Contrary to Syneron's suggestion, Invasix's request that the Court apply the Patent Local Rules to provide structure for this case is not some sort of ploy by Invasix's counsel to promote a "selective interpretation" or "selective reading" of caselaw interpreting those rules or gain some sort of tactical advantage based on familiarity with the rules.  To the contrary, both sides' counsel are familiar with the Patent Local Rules—counsel for Syneron frequently litigate in the Eastern District of Texas where the Court has adopted patent local rules modeled on those in the Northern District.  But more importantly, the Court is of course more than capable of assessing whether arguments presented by either side are based on a selective reading or interpretation of the caselaw, and any party urging such an interpretation would proceed at its own peril.

10

*Second*, proceeding through interrogatories invites parties to shift their contentions including spinning new theories when old ones are discredited, or, even worse, when they believe surprise can put the other side at a tactical disadvantage.  These outcomes would be unfair and prejudicial.  At a minimum, using interrogatories to learn parties' contentions increases the risk of discovery disputes between the parties that the Court would have to decide, and changes to contentions often delay resolution of substantive issues in the case because, for example, parties have to address newly created arguments after dispatching the old ones.  The Patent Local Rules (and cases from this District and the Northern District) set standards for the disclosure of contentions and amendments thereto—standards that avoid disputes between the parties as to what is and is not adequate or appropriate and let the parties and Court get on with resolution of the underlying disputes.

*Third*, avoiding a sequenced set of claim construction disclosures increases the likelihood that the parties talk past each other in the briefs submitted to the Court and do not agree on terms for which there should be agreement.

Therefore, Invasix urges the Court to set deadlines and substantive requirements for infringement and invalidity contentions as well as claim construction disclosures.[6]  Such requirements would appropriately require the parties to be upfront with their theories and to show good cause and diligence should those theories change over the course of the litigation.

## 7.      Statement Regarding Jury Trial And Length Of Trial

Both parties have requested a trial by jury.  The parties estimate that the trial will require six (6) business days, where each side is given fifteen (15) hours of testimony, excluding jury selection, opening statement and closing argument.  As the case progresses and the issues in dispute are narrowed, the parties will update the Court if they believe that

---

[6]      Syneron's refusal to agree to any deadlines before the close of fact discovery is puzzling in light of its cite to *Diagnostic Systems Corp. v. Symantec Corp.*, where this Court set deadlines for events including service of infringement contentions, invalidity contentions, claim construction briefs, and expert reports.  No. 06-cv-1211-DOC, ECF No. 102.

fewer trial days or hours of testimony are needed for this matter.

## 8. Statement Of Any Other Issues Affecting The Status Or Management Of The Case And Proposed Specific Dates

The parties are not presently aware of any other issues affecting the status or management of the case.

Pursuant to the Court's May 18, 2016 Order Setting Scheduling Conference, the parties propose the following dates for the Scheduling Order:

Plaintiff's Proposal

      a.    Discovery Cut-Off Date: March 27, 2017 (Monday);

      b.    Final Motion Cut-Off Date: May 8, 2017 (Monday);

      c.    Final Pre-Trial Conference: June 5, 2017 (Monday);

      d.    Trial: June 27, 2017 (Tuesday).

Invasix's Proposal

      a.    Discovery Cut-Off Date: August 21, 2017 (Monday);

      b.    Final Motion Cut-Off Date: October 9, 2017 (Monday);

      c.    Final Pre-Trial Conference: October 30, 2017 (Monday);

      d.    Trial: November 13, 2017 (Tuesday).

In order to streamline this case, Invasix further proposes the dates listed at the bottom of this joint submission for interim deadlines.

## 9. Report Pursuant to Fed. R. Civ. P. 26(f)

### A. Initial Disclosures

The parties have agreed to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a) on July 15, 2016.

### B. Discovery

Syneron anticipates taking discovery on the following subjects:

1. Any and all facts regarding the Patents-in-Suit that are relevant to any of 35 U.S.C. §§ 101-103, 271 and 282-285.
2. Any and all facts relevant to Plaintiffs' claims and damages.
3. Defendants' knowledge of the Patent-in-Suit;

4. Defendants' knowledge of Plaintiffs' products;
5. Defendants' copying of the patented technology and/or Plaintiffs' products embodying same;
6. Defendants' advertising of Defendants' products;
7. Any opinions, formal or informal, regarding infringement or validity of the Patent-in- Suit.
8. Defendants' knowledge of and communications with customers and potential customers of any of Plaintiffs and Defendants;
9. Defendants' knowledge of and communications with all persons associated with the making, using, selling and/or offering for sale of accused products.
10. Defendants' sales, profits, marketing, advertising and distribution of accused products;
11. Defendants' claim construction positions for the Patent-in-Suit;
12. Defendants' defenses; and
13. Defendants' non-infringement contentions for the Patent-in-Suit.

Plaintiff reserves the right to add other discovery subjects relevant to the subject matter of this case.

Invasix anticipates taking discovery concerning inventorship by the named inventors of each of the Patents-in-Suit as well as discovery from the inventors and third parties concerning, among other topics, prosecution of the Patents-in-Suit, conception and reduction to practice, and prior art. Invasix anticipates seeking discovery concerning Syneron's damages claim, as well as other topics, from Syneron's employees and any former employee(s). Invasix anticipates seeking discovery regarding third parties with knowledge of invalidating prior art. Invasix also intends to seek discovery related to the state of the art in the field at the time the invention(s) disclosed in the Patents-in-Suit were allegedly conceived and reduced to practice and at the time of the patent applications' filings. Discovery will also be needed on Invasix's defenses, including but not limited to laches, prosecution history estoppel, standing, and waiver. Invasix reserves the right to seek discovery on additional matters as new issues come to light in this case.

**C.  Electronically Stored Information**

The parties also agree that electronic discovery should proceed generally in accordance with Federal Circuit Advisory Council's Model Order Regarding E-Discovery in Patent Cases, subject to modifications proposed by the parties. The parties will confer

13

and then submit a proposed e-discovery order (and if necessary, identification of disputed positions) for the Court's review and approval by August 1, 2016.

### D.   Claims of Privilege

The parties agree to maintain the privilege of any privileged information inadvertently produced during discovery and will, as part of conferring on a protective order, confer regarding specific procedures for inadvertent disclosure of such materials.

### E.   Discovery Limitations

The parties' proposals regarding discovery limitations are noted above.

### F.   Any other Orders

Plaintiff's Position

As noted above, Syneron proposes that this case proceed in accordance with the Federal Rules and opposes Invasix's erroneous attempt to adopt the N.D. Cal. Patent Rules.

Invasix can obtain discovery of Syneron's contentions of infringement via the normal discovery process under FRCP 25, 30, 33, etc.  Defendants' attempt to limit the number of asserted claims prior to any fact discovery is unfounded.  Defendants' attempt to hamstring Plaintiffs' infringement case including before any discovery has been conducted goes beyond even the extreme limits imposed in the cases that Defendants' selectively cite from. For example, in the *AutoAlert* case, a reduction in the asserted claims was appropriate "where all of the Asserted Patents are by the same inventor, the technology is relatively simple, there is only a single product of Defendant's that Plaintiff claims infringes the Asserted Patents, and the earlier motion for preliminary injunction means that there has already been significant discovery, briefing, and court guidance.." *AutoAlert, Inc. v. DealerSocket, Inc.*, No. 13-cv-00657, Doc 127, p. 2 (C.D. Cal. April 18, 2014).  Further, in *AutoAlert*, the Plaintiff was only required to reduce the number of asserted claims "28 days after Defendant produces documents sufficient to show the complete details of RevenueRadar's operation." *Id.* at p. 2.  *AutoAlert* does not support limiting the asserted claims prior to reasonable discovery, and it would be unjust and improper to do so.

Defendants' suggestion that Plaintiff might be asserting 126 claims is wholly

1  unfounded and merely a straw man put up by Defendants in order to tear it down.

2  Defendants are engaging in unfounded speculation about the potential breadth of this case

3  before any discovery has taken place.   If Plaintiff discloses an unreasonable or

4  unmanageable number of claims in its discovery responses, the Court would be able to

5  address that issue if and when it ever became ripe.

6       Defendants' suggestion that they should be allowed to lay behind the log in disclosing

7  asserted prior art is unfounded.   Presumably, Defendants had a Rule 11 basis to allege

8  invalidity in their Answer filed in this case.   The basis for those pled allegations is clearly

9  discoverable, and should be discoverable before Plaintiff can fairly assess which asserted

10  claims, if any, should be trimmed in view of the infringement and validity issues actually

11  at issue in this case.

12      Including because Invasix likely already knows which prior art references it intends

13  to rely upon in this case, but it has to date not disclosed those references, its offer to narrow

14  their number at various junctures rings hollow.   Defendants' recitation of the *Stamps.com*

15  case is also highly selective.

16      In *Stamps.com*, the Federal Circuit affirmed the District Court's limitation of asserted

17  claims because "the district court clearly stated that it would 'remain flexible if plaintiffs

18  [sic] show[ed] good cause for additional claims.'" *Id.* at p.  Order Granting Mot. To Limit

19  the Number of Asserted Claims of the Patents–in–Suit, Stamps.com, Inc. v. Endicia, Inc.,

20  No. CV 06–7499 (CD.Cal. Mar. 17, 2008). The district court also stated that, "[i]f it can be

21  demonstrated ... that [fifteen claims] is absolutely unworkable, then we will discuss [number

22  sixteen]. If necessary, we will discuss [number seventeen]." *Samps.com Inc. v. Endicia,*

23  *Inc.*, 437 Fed.Appx., 897, 2011 WL 2417044, *3 (Fed. Cir June 15, 2011).  The holding of

24  the Federal Circuit is actually that "the district court did not abuse its discretion in refusing

25  to allow the additional claims" because "when Stamps.com requested to add additional

26  claims, it did not even attempt to make a good cause showing." *Id.*  As discussed in the

27  *Stamps.com* case, it would be an abuse of discretion and a denial of Syneron's due process

28  rights if this Court arbitrarily limited the number of asserted claims without permitting the

later assertion of additional claims with good cause shown.

Invasix's Position

As noted above, Invasix proposes adopting the Patent Local Rules of the Northern District of California in this case.

The Patents-in-Suit include 126 claims. Aside from identifying five claims in its Complaint (which Syneron has suggested it believes are non-limiting exemplary claims), Syneron has not provided Invasix with an indication of which claims it intends to argue Invasix infringes.

To make this case more manageable, Invasix proposes that Syneron select no more than 20 claims to pursue prior to claim construction, and no more than 10 claims following the Court's claim construction ruling. These limits will allow Syneron to identify a reasonable set of claims that will actually be tried so that the parties (and Court) are not wasting time and money litigating claims that will never see the light of day at trial.

Contrary to Syneron's suggestion, an order limiting asserted claims would not be an abuse of discretion. "It is undisputed that for the sake of judicial economy and management of a court's docket, a court may limit the number of asserted claims in a patent case." *Medtronic Minimed Inc. v. Animas Corp.*, 2013 WL 3322248, at *1 (C.D. Cal. Apr. 5, 2013) (citing Fed. R. Civ. P. 16(c)(2)(P)); *see also, e.g.*, *AutoAlert, Inc. v. DealerSocket, Inc.*, No. 13-cv-657 SJO (C.D. Cal. April 18, 2014), ECF No. 127 (in a five-patent case, requiring plaintiff to identify 20 asserted claims total (no more than 10 per patent) after receiving defendants' source code, and 10 claims total (no more than 5 per patent) following the claim construction order; and requiring defendant to identify 40 prior art references total after receiving plaintiff's identification of 20 claims, and 20 prior art references total after receiving plaintiff's identification of 10 claims); *Stamps.com, Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-03 (Fed. Cir. June 15, 2011) (affirming reduction to a total of 15 claims across eight asserted patents); *Broadcom Corp. v. Emulex Corp.*, No. 09-cv-1058 JVS (C.D. Cal. June 30, 2010), ECF No. 167 (ordering plaintiff to reduce the number of asserted claims from 178 to 20 because "proceeding with [178 claims] through claim construction,

summary judgment motions, and trial is an untenable proposition that would substantially drain the parties' and the Court's resources"). If a party seeks to assert additional claims or additional prior art references, it should do so through a motion and will need to demonstrate sufficient good cause for its request. *Stamps.com*, 437 F. App'x at 902.

Moreover, Syneron cannot reasonably expect to pursue 126 claims in this case. While Syneron claims that the prospect of litigating an unreasonable number of claims is a straw man, Syneron's unwillingness to agree to any reasonable limitation on the number of asserted claims speaks volumes. Allowing Syneron to keep 126 (or even 40 or 50) claims alive during discovery and claim construction serves only to impose unnecessary burden and expense on the parties, and, importantly, the Court. If Syneron believes that there are unique issues presented by the claims that require it pursue more claims than Invasix has proposed, Syneron should identify those issues and the number of claims it believes it needs to pursue. *See, e.g., In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312 (Fed. Cir. 2011) (rejecting challenge to district court order that patent holder "demonstrate that some of its unselected claims presented unique issues as to liability or damages," before it permitted additional claims to be asserted).

On its side, Invasix's intention is to keep the prior art case focused from the outset and it agrees to abide by corresponding deadlines for streamlining its prior art. As such, Invasix will limit its prior art references to a total of 30 prior art references before claim construction and a total of 15 prior art references after claim construction.

With respect to timing, Invasix proposes that Syneron's initial identification of 20 claims take place with Syneron's infringement contentions. Invasix would limit its invalidity contentions to 30 prior art references. In this way, both the asserted claims and prior art would be focused prior to claim construction proceedings. Invasix further proposes that Syneron's identification of up to 10 asserted claims in total take place no later 14 days after the Court's claim construction order, and that Invasix's further narrowing of prior art references would take place 14 days later. This timing would allow the parties to focus expert reports and dispositive motions practice on the claims and prior art that the parties

intend to pursue.[7]

## 10.    Report Pursuant To Local Rule 26-1

### A.    Manual For Complex Litigation

The parties do not believe the Manual for Complex Litigation should be utilized in this case.

### B.    Motion Schedule

The parties' proposed motion cutoff date is set forth above.

### C.    ADR

The parties' recommendation for ADR Procedures is set forth above.

### D.    Trial Estimate

The parties' time estimate for trial is set forth above.

### E.    Additional Parties

The parties' position regarding the inclusion of additional parties is set forth above.

### F.    Expert Witnesses.

The parties anticipate there will be expert witnesses related to, at least, (non)infringement, (in)validity, and damages, as well as other matters, such as patent prosecution and the relevant industry, as necessary. The parties propose exchanging expert reports following the close of fact discovery.

## 11.    Proposed Case Schedule

<u>Plaintiff's Proposal:</u>

In accordance with the Court's rules, Plaintiff has set forth above the dates and deadlines that should be entered for this case.  For ease of reference, they are also set forth

---

[7]     Syneron argues that setting dates for limiting the number of claims and prior art references is inappropriate because Invasix "has to date not disclosed" prior art references. But Invasix has not disclosed its invalidity contentions because Syneron has not yet identified its asserted claims or served infringement contentions.  (Nor has Syneron served interrogatories seeking invalidity contentions.)  Once Syneron discloses which claims it it is asserting and provides its infringement contentions (which frame the alleged scope of the claims), Invasix will be able to prepare and serve its invalidity contentions applying that alleged claim scope.

below:

     a.    Discovery Cut-Off Date: March 27, 2017 (Monday);

     b.    Final Motion Cut-Off Date: May 8, 2017 (Monday);

     c.    Final Pre-Trial Conference: June 5, 2017 (Monday);

     d.    Trial: June 27, 2017 (Tuesday).

Defendants seek to complicate and delay this matter through a myriad of unnecessary, unreasonable, and unjustified deadlines, as set forth below. Rather than relying on the four dates required by the Court, Defendants have proposed twelve additional dates (sixteen total), which result in a trial date over four months later than Plaintiff's proposal. Rather than requiring a myriad of additional rules and deadlines, including Court deadlines (*i.e.*, for a claim construction hearing), the Court should, as it has done in previous patent cases, enter the dates proposed by Plaintiff and allow this case to proceed more quickly and efficiently under the Federal Rules. Further, Defendants' proposal for closing fact discovery almost a month prior to the commencement of expert discovery is unwise, including because it forfeits almost a month of fact discovery, and because fact discovery sometimes needs to be taken (for example fact witness depositions) or supplemented as experts are preparing their reports and focusing on the issues most important to those reports. Defendants' rehash of their unfounded arguments for imposing the Northern District Local Rules on this case are already addressed above.

Invasix's Proposal:

In order to logically structure this case and require the parties to meet certain disclosure deadlines prior to the close of fact discovery, Invasix proposes a case schedule that includes discovery deadlines, claim construction, and expert reports. Syneron does not dispute that at some point in the litigation it will need to disclose its asserted claims, that the parties will need to brief claim construction, or that the parties will need to serve expert reports. Rather, Syneron is simply refusing to commit to any dates for these events.[8]

---

[8]     Invasix is happy to work with Syneron to resolve any conflicts as to the dates proposed below, but Syneron has declined to discuss a case schedule beyond the four dates

19

The deadlines Invasix proposes will help manage this case for the benefit of the Court and the parties.  For example, setting deadlines ahead of the claim construction briefing due dates will help simplify the claim construction process by requiring the parties to identify and then confer on disputed claim terms ahead of time.  Moreover, exchanging preliminary claim construction positions and extrinsic evidence will help ensure that the parties understand each other's contentions and work to narrow their disputes before presenting them to the Court.  The alternative Syneron proposes is to leave all the disputed terms for the parties' briefs, thereby increasing the burden on the Court and reduce the likelihood of claim construction resolving the key substantive disputes in this case.

Likewise, setting deadlines for expert discovery after the close of fact discovery and before the deadline for filing dispositive motions will permit the parties to prepare their reports based on the evidence gathered in fact discovery and then to use this evidence in their summary judgment motions.  Syneron's proposal will make opening expert reports due around the same time as the close of fact discovery, which would make expert discovery less useful for the Court during summary judgment proceedings.  In fact, under Syneron's proposals, rebuttal expert reports will likely be due after the deadline for filing dispositive motions and *Daubert* motions.

Invasix therefore proposes the following schedule for this case:

| **Event** | **Proposed Date** |
|---|---|
| Plaintiff's Disclosure of Asserted Claims and Infringement Contentions and Accompanying Production of Documents | August 1, 2016 |
| Defendants' Disclosure of Invalidity Contentions and Accompanying Document Production | September 15, 2016 |
| Exchange of Proposed Terms for Claim Construction | September 30, 2016 |
| Exchange of Preliminary Claim Construction and Extrinsic Evidence | October 14, 2016 |
| Joint Claim Construction and Prehearing | October 21, 2016 |

above.

JOINT REPORT OF THE PARTIES AND DISCOVERY PLAN PURSUANT TO
FED.R.CIV.P. 26(F) / CASE NO. 8:16-CV-00143-DOC-KES

| Event | Proposed Date |
|---|---|
| Statement | |
| Plaintiff's Claim Construction Brief[9] | October 28, 2016 |
| Defendants' Responsive Claim Construction Brief | November 18, 2016 |
| Plaintiff's Reply Claim Construction Brief | November 30, 2016 |
| Claim Construction Hearing | December 7, 2016 (or as soon thereafter as convenient for the Court) |
| Close of Fact Discovery | May 19, 2017 |
| Disclosure of Opening Expert Reports on Infringement, Invalidity, and Damages | June 23, 2017 |
| Disclosure of Rebuttal Expert Reports on Infringement, Invalidity, and Damages | July 21, 2017 |
| Close of Expert Discovery | August 21, 2017 |
| Final motion cutoff | October 9, 2017 (Monday) |
| Final pretrial conference | October 30, 2017 (Monday) |
| Trial | November 13, 2017 (Tuesday) |

Dated: July 8, 2016

COLLINS EDMONDS SCHLATHER & TOWER PLLC

By:    */s/ Stephen F. Schlather*
_____
STEPHEN F. SCHLATHER

Attorneys for Plaintiff
SYNERON MEDICAL LTD.

Dated: July 8, 2016

DURIE TANGRI LLP

By:    */s/ Sonal N. Mehta*
_____

---

[9]     If any party submits an expert declaration and/or expert report for the purposes of claim construction, that party will submit the declaration with its respective principal claim construction brief and will make the expert available for deposition at least ten (10) days prior to the due date of the opposing party's responsive brief.

21

SONAL N. MEHTA

Attorneys for Defendants
Invasix, Inc. and Inmode MD Ltd.

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4.3.4, regarding signatures, I, Stephen F. Schlather, attest that concurrence in the filing of this document has been obtained.

Dated: July 8, 2016          By: _____ */s/ Stephen F. Schlather*
                                        Stephen F. Schlather

**CERTIFICATE OF SERVICE**

1

2          I hereby certify that on July 8, 2016 the within document was filed with the Clerk of

3   the Court using CM/ECF which will send notification of such filing to the attorneys of

4   record in this case.

5

6                                                        _/s/ Stephen F. Schlather_
                                                          Stephen F. Schlather
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28