UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA

```
SYNERON MEDICAL LTD.,        ) CASE NO: 8:16-CV-0143-DOC-KESx
                             )
           Plaintiff,        )           CIVIL
                             )
    vs.                      )      Santa Ana, California
                             )
INVASIX, INC., ET AL.        )   Tuesday, September 5, 2017
                             )      (8:21 a.m. to 8:28 a.m.)
           Defendants.       )
```

STATUS CONFERENCE RE:  APPOINTMENT OF SPECIAL MASTER

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

| | |
|---|---|
| For Plaintiff: | JOHN J. EDMONDS, ESQ.<br>Collins Edmonds & Schlather, PLLC<br>355 S. Grand Avenue, Suite 2450<br>Los Angeles, CA 90071 |
| For Defendants: | SONAL N. MEHTA, ESQ.<br>LEERON MORAD, ESQ.<br>Durie Tangri, LLP<br>217 Leidesdorff Street<br>San Francisco, CA 94111 |
| Court Reporter: | Recorded; CourtSmart |
| Deputy Clerk: | Dwayne Roberts / Evelyn Synagogue |
| Transcribed By: | Exceptional Reporting Services, Inc.<br>P.O. Box 18668<br>Corpus Christi, TX 78480-8668<br>361 949-2988 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1 **Santa Ana, California; Tuesday, September 5, 2017; 8:21 a.m.**

2 **(Call to Order)**

3 **THE COURT:** And then the other matter that I'm going 4 at least start the process, although I think I'm going to be 5 working all day and maybe tomorrow is *Syneron Medical versus* 6 *Invasix, Inc*.

7 Counsel, good morning.

8 **MS. MEHTA:** Good morning, your Honor. Sonal Mehta 9 and Leeron Morad for the Defendants, Invasix and Inmode.

10 **THE COURT:** Thank you. It's a pleasure to meet you. 11 Where are your law offices located?

12 **MS. MEHTA:** Our offices are in San Francisco, your 13 Honor.

14 **THE COURT:** San Francisco, okay.

15 **MS. MEHTA:** Yes.

16 **THE COURT:** And who's with you today?

17 **MS. MEHTA:** My colleague, Leeon Morad.

18 **THE COURT:** Why don't you step over, sir, and 19 identify yourself.

20 **MR. MORAD:** Leeon Morad, your Honor.

21 **THE COURT:** And you're -- are you with the same law 22 office?

23 **MR. MORAD:** Yes, I'm with Ms. Mehta.

24 **THE COURT:** Great. Are you my lead counsel?

25 **MS. MEHTA:** Yes, your Honor. I'm lead trial counsel.

1   **THE COURT:** Okay. And, sir, you are?
2   **MR. EDMONDS:** Your Honor, John Edmonds. I'm lead
3   counsel for the Plaintiff, Syneron.
4   **THE COURT:** And where are your offices located?
5   **MR. EDMONDS:** We have an office in Santa Ana. We
6   also have an office in Houston, where I'm primarily based.
7   **THE COURT:** Oh, you're from Houston, primarily?
8   **MR. EDMONDS:** Yes.
9   **THE COURT:** Is that the area that captures all the
10  patent litigation in the country?
11  **MR. EDMONDS:** No, it's --
12  **THE COURT:** I'm just kidding you, counsel.
13  **MR. EDMONDS:** -- it's to the northeast. We're
14  capturing water right now, your Honor.
15  **THE COURT:** Yeah. And that's a tragedy, by the way.
16  I don't mean to be facetious about that at all. It's just a
17  lot of us have been very interested in the patent litigation
18  down in Texas.
19  **MR. EDMONDS:** Understood, your Honor. That's
20  northeast of us.
21  **THE COURT:** But that's not you?
22  **MR. EDMONDS:** But, yes, we're down in Houston. So --
23  **THE COURT:** Well, you're welcome here and it's nice
24  to have you here.
25  **MR. EDMONDS:** Thank you, your Honor.

1    **THE COURT:** Now, we have a whole set of problems. Do
2  you see my esteemed law clerk who's raising her hand right now?
3  First of all, we love patent litigation. You got time for a
4  story? Take your hands out of your pockets?
5    **MR. EDMONDS:** I apologize, your Honor.
6    **THE COURT:** I've only been reversed by the circuit
7  one and a half times in 18 years, the federal circuit. Isn't
8  that an amazing record? Nobody has matched it. You know why?
9    **(Alarm goes off)**
10       It'll explode in just a moment.
11       It's because I have terrific law clerks who love
12  patent law, who devote their energy to it and so do I. And you
13  won't be my next reversal. And, therefore, when I get a
14  summary judgment motion where it actually looks like I'm
15  supposed to be construing claims to decide this, through
16  dueling experts, I've got a problem.
17       Number two -- and it's not -- you're not in the
18  doghouse, okay? You're doing fine. But we know what we're
19  doing here. And, therefore, we felt uneasy when we saw not
20  only the summary judgment motions come to us but also what
21  looked like to be motions in limine. And it caused us to slow
22  down and we're not going to take the chance because I know your
23  clients are going to get me a special master, aren't they? But
24  then, I got word back that I'm going to pick the special
25  master. No, I'm not. Never going to be accused of favoritism

1  or going to my friend.  You are.

2          So Jamell (phonetic) is going to sit down with you

3  today in the complex courtroom and explain all the problems

4  we're going to work through.  And I don't know if we're going

5  to get that done today or tomorrow.  That's up to you.  But I'm

6  going to have a clear path about what my expectations are and

7  what resources I need at your expense to make certain I

8  understand this patent.  Understood?

9          **MS. MEHTA:**  Yes, your Honor.

10         **THE COURT:**  Okay?  So, you're not in the doghouse.

11 But if you're going to ask the best of me, I have to ask you to

12 be a lot clearer about where we stand on this case.  So I

13 brought you in here because there was no way to do that except

14 the brutality of an order.

15         Now, I'm going to give up my lunch hour for you.  I'm

16 going to start a jury trial in exactly seven minutes.  Okay?

17 And I'm not going to be available until lunchtime.  I'm going

18 to see you at lunchtime.  And then, I'm not available until

19 5:00.  Okay?

20         So, clear (phonetic) your calendar with me.  You

21 don't know me at all.  You know the hours I keep?

22         **MS. MEHTA:**  We have heard by reputation, your Honor.

23         **THE COURT:**  They're wonderful hours.  Now, why do I

24 do that?  Got time for a story?

25         **(No audible response)**

1           Good.  You have no choice.
2           When I first came here, one of the judges told me --
3  very senior judge -- "Dave, don't worry about patent law.
4  Nobody knows what they're doing anyway.  Just undertake the
5  claims construction, send it up to the circuit.  They'll either
6  reverse you or they'll affirm you."  And, by the way, it's a
7  De Novo (phonetic) standard at the time.  So, nobody's just
8  dropping by to see what you do anyway, it's meaningless.
9           Now, think about that for a young colleague coming on
10 the bench.  That's not the kind of patent law you want to
11 practice, is it?  No.
12          So the first bar I joined because nobody would join
13 it was the patent bar.  You were the first group that I went
14 out and joined when I came to the federal bench.
15          And, by the way, Wyatt Earp, Raider (phonetic) and
16 the rest of them, I've had a great time.  Michelle (phonetic)
17 (indiscernible) terrific call.
18          And, therefore, we take a real interest in it.  I
19 don't want to embarrass you, I don't want to cause you unneeded
20 expense by retrying the case, you know, in the future by a
21 reversal.  So, therefore, to give our best foot forward, I need
22 to really understand what you need.  And when we got this for
23 dueling experts, the first problem is it would be easy to deny
24 both your summary judgment motions because you haven't seen in
25 the history of certain (indiscernible), a court take two

1 dueling experts and not pass it through to trial, frankly.  But
2 maybe, maybe you have that kind of issue here.  I just don't
3 know.
4           So the easy thing to do would be to deny both your
5 summary judgment motions, pass them through to trial, leave
6 you, you know, twisting in the wind about what's going to
7 happen, probably get a last-moment claims construction request.
8           Now, second story is when I first came here, Mariana
9 Pfaelzer was probably our finest patent judge, wonderful lady.
10 And she would construe your patent -- construe your claims at
11 the earliest possible hour (indiscernible).  Judge Rafeedie,
12 equally fine colleague, he didn't construe your claims until
13 you were literally in trial which left you just in no person's
14 land.
15           I came in the middle road.  I construe your claims if
16 they needed construing at the time of summary judgment because
17 it saves you costs.  If I hire a special master to begin with,
18 what happens is you're running up your costs.  Then, we get to
19 summary judgment and oftentimes -- about 50 percent of the
20 time, your claims or the case is resolved before we get there
21 so it saves you money because my wisest people are you.  We'll
22 catch up with you concerning your particular patent in a while.
23 So it's been a way to save costs and also to get you here one
24 time, not numerous times.  That's why you're here.
25           But seeing this today, it just is occurring to us

1  that there's some kind of understanding that we have to have
2  concerning what those claims are, if they need to be construed
3  to have some meaningful, you know, document that we write to
4  you about why we're either granting or denying summary
5  judgment.
6          And so, I'm going to have you work with Jamell.
7  Normally, I wouldn't but I'm trying to save you time and get
8  you out of here.  Otherwise, I wouldn't see you until 5:00
9  o'clock this evening, okay?
10         So Jamell, these kind and wonderful people from San
11 Francisco and Houston belong to you, okay?  And I'll meet you
12 again at noontime and if I can get you out of here, I will.
13 But if not, then bear with me because we want to get it right,
14 okay?
15     **(Parties thank the Court)**
16         All right.  Thank you very much.
17     **(This proceeding was adjourned at 8:28 a.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____               February 28, 2018_

TONI HUDSON, TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC